# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                               **CRIMINAL ACTION NO. 1:18-CR-17-1**
                                    **JUDGE KEELEY**

**AMANZE ANTOINE,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to a Referral Order (ECF No. 53) referring the case to the undersigned to enter a report and recommendation as to the appropriate disposition of the case.

## I.    PROCEDURAL HISTORY

On March 6, 2018, an indictment was filed against Amanze Antoine ("Defendant") charging him with one count of Conspiracy to Violate Federal Firearms Laws from approximately May 15, 2017, until June 20, 2017. (ECF No. 1). The indictment alleged that Defendant recruited drug users/addicts to provide false documentation when purchasing firearms and would then drugs for the firearms. Id. at 2. The firearms were then transported to New York City, New York and sold to other individuals. Id. The indictment indicated that Margaret Parker and Tommy Calhoun were Defendant's co-conspirators who provided false information on the ATF forms to purchase firearms. Id. On May 14, 2018, Defendant filed a Motion to Suppress arguing that 1) law enforcement lacked probable cause to justify the issuance of a search warrant and 2) the search warrant is facially deficient because it lacked a sufficient nexus between the contents of the cell phone and the alleged crime.

The Government's response was due on May 21, 2018, and the motion hearing was scheduled for May 29, 2018. The Government did not provide a response before the scheduling order's deadline of May 21, 2018. On May 22, 2018, Defendant filed a *pro se Motion for New Counsel* arguing that his current counsel was threatening him to take a plea and that she was racist. (ECF No. 62). Following a sealed hearing, Defendant was appointed new counsel. (ECF No. 69). To give new counsel time to review the Motion that was previously filed by defense counsel, the Motion hearing was continued. (ECF No. 68). On May 25, 2018, after the undersigned's office was notified that Defense Counsel wished to continue with the hearing as previously scheduled and the undersigned again scheduled the hearing for May 29, 2018, at 10:00 am. (ECF No. 70). On May 29, 2018, at 9:26 a.m., the Government filed a Motion to Continue the hearing. (ECF No. 71). The Government stated that due to the Assistant United States Attorney and support staff leaving early on May 25, 2018 for the holiday weekend, the United States was unable to issue a subpoena to the witness for the May 29, 2018 hearing.

At the hearing on May 29, 2018, the Government was not present and the undersigned granted the *Motion to Continue* (ECF No. 73). The Hearing was rescheduled for June 1, 2018, at 9:00 a.m. (ECF No. 73). On May 29, 2018, the Government filed its *Objection to Defendant's Motion to Suppress* (ECF No. 74). The *Objection* states, in its entirety:

> Now Comes the United States of America and William J. Powell, United States Attorney for the Northern District of West Virginia by Zelda E. Wesley, Assistant United States Attorney for District, and hereby notices the Court of its' objection to defendant's Motion to Supress Cell Phone Evidence. The United States disagrees with the facts as presented by defendant, as well as defendant's conclusions. The United States will present evidence disputing defendant's erroneous facts and conclusions, and will submit a memorandum addressing the evidence presented following the suppression hearing.

Following the United States' *Objection*, the undersigned entered an Order[1] requiring that the United States file any memorandum that it wishes the Court to review on or before May 30, 2018. (ECF No. 80). The Government filed no such memorandum.[2] On June 1, 2018, Defendant in person and by newly appointed counsel, William Pennington, as well as, the United States, by Zelda E. Wesley, Assistant United States Attorney, were present for the Motion hearing.

## II.     FACTUAL BACKGROUND

At the Motion hearing, the Government called Patrolman Nicholas John Junkins to testify. Patrolman Junkins was employed at the Star City Police Department on the night of June 19, 2017 At approximately 10:00 p.m., Patrolman Junkins, in a marked police car, pulled over a 2004 Ford Track Super Duty for having no running taillights. This vehicle belonged to Tommy Calhoun, the driver of the vehicle. When the Patrolman approached the vehicle, he noticed that Tommy Calhoun was in the driver's seat and Defendant was in the back right passenger's seat seated next to a black suitcase. Patrolman Junkins asked for and was provided with the driver's identification. Defendant voluntarily handed police officer's his identification. Patrolman returned to his vehicle to "run the ID's through dispatch." Mr. Calhoun exited the vehicle to talk to the Patrolman to explain the reason for the broken taillights. When speaking with Mr. Calhoun, Patrolman Junkins noticed that Mr. Calhoun's pupils were constricted and he had blood shot eyes. Patrolman Junkins asked Mr. Calhoun if he was on any controlled substances. He

---

[1] The Order details that Local Rules of Criminal Procedure 4701 requirements that a response to a pretrial motion contains "legal support or memoranda." (ECF No. 80). The Government has not provided that in their *Objection*. Id. The Order also states that while the Government told the Court that it would submit a memorandum following the hearing, the Government did not request an extension of time to file nor provided the Court with the explanation as to why it should be allowed to enter a memorandum after the hearing. Id. The Order also reiterates the importance of filing substantive responses prior to the motion hearing to allow Defendant to adequately prepare for the hearing. Id.

[2] Until a superseding indictment is entered, the undersigned expects that a case will continue pursuant to the scheduling order and requirements of the rules of criminal procedure so that timely Report and Recommendations on any motions filed can be submitted to the District Court.

admitted to using crack cocaine approximately one hour prior to the stop and then gave Patrolman his consent to search the vehicle.

A secondary officer was called to the scene, as Patrolman Junkins indicated was protocol. Defendant was asked to step out of the vehicle and he appeared agitated and told Patrolman Junkins that he need to use the restroom. Patrolman told Defendant that he needed to wait until the end of the traffic stop to use the restroom. Defendant repeatedly asked for permission to use the restroom. The secondary officer arrived on scene and Defendant and Mr. Calhoun were instructed to approach Patrolman Junkin's vehicle. At that time, Defendant turned and fled the scene. Defendant ran across a parking law, over a retaining wall and crossed into the woods. Law enforcement initially pursued Defendant; however once he jumped over a wall, law enforcement ceased attempting to follow Defendant.

The car was initially searched, with permission of the owner Mr. Calhoun. Law enforcement found three firearms, two that had been recently purchased and a third firearm that had been reported stolen. There were also two cell phones found in the bag in the backseat—a white Motorola and a black Samsung. Sometime after the pursuit, law enforcement also found a cell phone, a black ZTE, in the field near where Defendant fled, that they believed to have belonged to Defendant. Patrolman Junkins, however, testified that he did not see Defendant with a cell phone in his hands and did not see him toss a cell phone in the field.

Following the completion of the traffic stop, Mr. Calhoun's vehicle was impounded and Patrolman Junkins was ordered to obtain search warrants for two cell phones that were found in the suitcase in the rear left passenger seat next to where Defendant was seated. The warrants for the White Motorola and the Back Samsun were executed and signed by the magistrate on June

28, 2017. Following the request for those search warrants, a week later, a search warrant for the third cell phone that was found in the field was issued.

The actual substance of the search warrants for the cellphones found in the vehicle are substantively different than the warrant for the cell phone in the field. The search warrant for the Black ZTE cell phone states in pertinent part that Patrolman Junkins was investigation a violation of West Virginia Code S 61-3-18 "Receiving or transferring stole goods." The search warrant describes the property to be seized as "any and all data to include, but not limited to, messages received and deleted files, photographs and videos contained within the hard drive and any portable storage device contained within the cellular phone." The warrant details the facts for the belief are: "On 6/19/2017 I conducted a traffic stop. After speaking with the driver, who gave consent to search, I had the rear passenger get out of the vehicle. The rear passenger, Antoine, then fled on foot and is still at large. While looking for Antoine, a black cell phone was located in the vicinity of where Antoine fled towards. During search of vehicle three firearms were located, on which was reported stolen. These items were located in the vehicle near Antoine." The search warrant does not describe the belief of the necessary for the search.[3]

The other two warrants, for a white Motorola and black Samsung, warrants detail a similar factual scenario, but also states that "the affiant has cause to believe and does believe that property [is] designed and intended for use which is and has been used as a means of committing

---

[3] The standard form for search warrants allows space for the affiant to fill in a factual scenario and other pertinent information to the search warrant. The search warrant also has the following section that the law enforcement officer is to choose from to explain the reasoning for the search warrants:
   That the affiant has cause to believe and does believe that property,
   a) (Stolen) (Embezzled) (Obtained by false pretenses)
   b) (Designed and intended for use) which is and has been used) as a means of committing such criminal offense
   c) (Manufactured) (sold) (concealed) (possessed) (controlled) (designed and intended for use) (which is and has been used) in violation of the criminal laws of state
   d) (Evidence of a crime)
(ECF No. 52-1 at 1). The law enforcement officer scratches or marks out which ever reasoning is inapplicable to the factual scenario, as evidenced by the other search warrants executed by the same officer in this case for the other two cell phones. This search warrant does not indicate which reasoning was the basis for needing the warrant.

such criminal offense [and] which is and has been used in violation of the criminal laws of the state, [and is] evidence of a crime." These two search warrants also specifically indicate that the affiant believed the property, the cellphone, was designed and intended for use which is and has been used as a means of committing such criminal offense and was evidence of the crime Receiving or transferring stolen goods. (ECF No. 52-1 at 2, 3). These two search warrants also states that "[t]hese items may assist in determining the whereabouts of Antoine and hold the evidence of a crime." Id. Patrolman stated that he had no reason to believe that he did not have a valid search warrant.

This search warrant was signed by a different magistrate than the other two search warrants. Patrolman Junkins stated that he was unsure of why there was a delay in obtaining the third search warrant and states that "he didn't have time to get around to it." Notably, Patrolman Junkins does not remember which officer took the warrants to the magistrate to get them signed nor does he know what information was relayed to the magistrate during the warrant meetings. Patrolman Junkins testified that during search warrant application meetings with magistrates, some magistrates ask questions and discuss the affidavit and some magistrates just ask the presenting officer under oath if the information contained in the affidavit is accurate.

When asked about what kind of information that he was looking for on the cellphone, Patrolman Junkins testified that he was hoping to obtain "any kind of evidence that would allow us to discover that there were any kind of . . . um . . . digital evidence saying that sometimes people use their cell phones as computers, notebooks anything along there that would say that there was any kind of meetings or proof of making any kind of statements over text message . . . umm . . . facebook media, social media that would allow us to understand that somebody was

transferring the stolen goods." Patrolman did not know who the cell phones belonged to, but stated that he was "hoping that" the cell phone belonged to Defendant.

At the end of the hearing, the undersigned inquired as to the Defendant's argument concerning whether or not an individual has a privacy interest in property that had been abandoned. The Defense was not adequately prepared to argue the extent of his client's privacy interest in the cell phones and thus address the issue of standing, although he stated that the cell phones did belong to his client.[4] The Government, when proffering whether Defendant had a privacy interest, cited four cases that purportedly supported this theory, although none of the cases were Fourth Circuit and mandatory authority. At this time, Defendant has not requested the cell phone back from law enforcement. Defense Counsel was given the opportunity to file a supplemental memorandum that addresses the issue of abandonment that arose at the hearing and as of June 4, 2018 did not do so.

### III.   ARGUMENT

For evidence to be excluded for a violation of the Fourth Amendment, Defendant must first establish that he enjoyed a reasonable expectation of privacy in the property. Rawlings v. Kentucky, 448 U.S. 98 (1980). "This includes the obligation of demonstrating, where the Government reasonably contests their claim, that their expectation of privacy existed contemporaneously with the particular search or seizure at issue." United States v. Harris, 2016 WL 1441382 (E.D. Va. April 11, 2016); United States v. Olsen, 245 F. Supp. 641 (D. Minn 1965) (stating that the status of the property at the time of the search and seizure is controlling). A defendant must establish that he 1) had a subjective expectation of privacy and 2) that the expectation is reasonable. Katz v. United States, 389 U.S. 347 (1967). The burden of proving this

---

[4] The Defense and the Court were not made aware that this was part of the Government's argument until the end of the Motion hearing.

7

expectation is on the defendant to prove that he has standing to even challenge a search or seizure. Rakas v. Illinoi, 439 U.S. 128 (1978). When a claim of abandonment is made, the same analysis as completed for standing should be completed for abandonment because "the result is precisely the same."[5] United States v. Walker, 624 F.Supp. 99 (D. Md. 1985) ("the two inquiries merge into one, namely whether governmental officials violated any legitimate expectation of privacy held by the defendant") (citing Rawlings v. Kentucky, 448 U.S. 98 (1980)).

"[W]hen a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it." United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005). Abandonment of property is most often established by demonstrating either that defendant denounced his ownership or that defendant physically relinquished the property, especially during flight to make evading law enforcement easier. United States v. Sparks, 806 F.3d 1323 (11th Cir. 2015). To determine whether a defendant abandoned his property, the court must consider the totality of circumstances. United States v. Manning, 440 F.2d 1105 (5th Cir. 1971).

The totality of the circumstances may be inferred from "words spoken, acts done, and other objective facts." United States v. Thomas, 864 F. 2d 843 (D.C. Cir. 1989) (citing United States v. Colbert, 474 F. 2d 174) (5th Cir. 1973)); Ramos, 12 F.2d at 1022-23; United States v. Pirolli, 673 F.2d 1200 (11th Cir. 1982). One component of abandonment that must be demonstrated is the defendant's voluntary intent to abandon the property. Johnson v. City of Fairfax, 394 F. Supp. 387 (E.D. Va. 1972); United States v. Anderson, 663 F.3d 934 (9th Cir. 1981). A reasonable expectation of privacy is different from that of establishing a property interest in property. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005); United States v.

---

[5] Both the issues of standing and abandonment are for the purposes of this Report and Recommendation considered together under one analysis.

Fulani, 368 F.3d 351 (3d Cir. 2004). Although they are two different considerations, a person's property interest is relevant to establishing whether abandonment occurred. Id. Physical relinquishment can be demonstrated through by voluntarily discarding property, leaving property behind, or otherwise relinquishing the interest. Ramos, 12 F.2d at 1022; United States v. Edwards, 441 F.2d 753 (5th Cir. 1971).

Losing property by accident, through carelessness, does not necessarily negate a privacy interest, especially when there is a request to retrieve the property. Ramos, 12 F.3d at 1026. Abandonment during proper police activity does not itself establish that there was a violation of a defendant's Fourth Amendment right. Abel v. United States, 362 U.S. 217 (1960); United States v. Miller, 974 F.2d 953 (8th Cir. 1992).

Although the Fourth Circuit is silent on whose burden it is to establish that a defendant abandoned property, many other courts have determined that the Government has the burden of proving that Defendant voluntarily abandoned the property. United States v. Fulani, 368 F.3d 351 (3d Cir. 2004); United States v. Freire, 710 F.2d 1515 (11th Cir. 1983); Ramos, 12 F.3d at 1023; Olsen, 245 F. Supp. 641.

  a. *White Motorola and Black Samsung cell phones found in the vehicle*

There is no question regarding whether or not Defendant had a reasonable privacy interest in the information contained on his cell phone. This expectation has been determined to be reasonable due to the immense amount of storage capacity of which modern cell phones are capable. Riley v. California, 134 S. Ct. 2473, 2479 (2014). The Government is arguing, however, that this expectation of privacy was lost when Defendant abandoned his property when he fled from law enforcement. The issue of whether Defendant abandoned his property in the vehicle after he fled from police and left his belongings behind has been adjudicated by many courts.

9

This factually similar scenario has been previously adjudicated in the Fourth Circuit. In United States v. Kirlew, 291 Fed. App'x 536 (4th Cir. 2008), law enforcement were pursuing a defendant in his vehicle. The defendant exited his vehicle while it was still running, and fled the scene. The Court determined that the vehicle and the contents of the vehicle had been abandoned and a search of the vehicles contents did not violate the defendant's Fourth Amendment rights.

The Government relied on United States v. Smith, 648 F.3d 654 (8th Cir. 2011), to demonstrate that Defendant left the vehicle and fled from law enforcement, which established abandonment. Similarly here, although Defendant did not own the vehicle that he fled from, he intended to leave the scene and made no effort to retrieve the belongings from the vehicle subsequent to their seizure. Patrolman Junkins saw Defendant flee and leave his bag and cellphones behind. Also, at no time, did Defendant return to the scene in an attempt to regain his property. While Defendant admitted that he these cellphones belong to him, in consideration of the totality of the circumstances, Defendant voluntarily abandoned this property when he fled the scene law enforcement voluntarily leaving his property behind.

      *b. Black ZTE cell phone found in the field*

The issue of whether the cell phone that was retrieved from the field was abandoned should be determined based on the totality of the circumstances, including the intent of the Defendant. While this issue was only addressed at the hearing, when given time to respond to the Government's argument, Defense Counsel did not provide a written response to argue that Defendant had not abandoned the property.

In the Government's proffer during the hearing, it relied on United States v. Taylor, 462 F.3d 1023 (8th Cir. 2006), which found that a defendant fleeing law enforcement had abandoned his property, including a cell phone, when he threw his property on the street. In that case, law

enforcement testified that they witnessed defendant "grab a black bag from the trunk with his right hand, and run into an alley with a small black object in his left hand. The [defendant] disappeared behind a garage, reemerged seconds later without the black bag, and continued down the alley, making an 'under-arm-type throw' with his left hand before disappearing." Id. at 1025. A subsequent search, immediately following this event, produced a cell phone in the street. Similarly, the Government argued that United States v. Tinoco, 304 F.3d 1088 (11th Cir 2002), asserted that when fleeing law enforcement, property that is dropped is considered abandoned. In Tinoco, the United States Coast Guard was pursuing a vessel and witnessed the defendants on the vessel throw barrels, of what was later determined to be cocaine, overboard while the defendants fled. The Court held that the act of dropping barrels over the side of the vessel into the water was intentionally abandoning the property.

The Government also relied on United States v. Sparks, 806 F.3d 1323 (11th Cir. 2015), to argue that abandonment of a cell phone rendered a defendant's claim of a reasonable expectation of privacy non-existent. In this case, a defendant misplaced a cell phone inside of Walmart. The defendant contacted the store and explained the circumstances. The defendant then told the finder of the phone not to return the missing phone to customer service, but attempted to schedule a meeting with the finder. Following that conversation, incriminating photos were discovered on the phone and the defendant was arrested on child pornography charges. The Court reasoned, however, that the defendant maintained his reasonable expectation of privacy in the cell phone's contents until the defendant affirmatively stated that he did not want the finder to return the cell phone to an employee. The Court determined that the defendant denouncement his ownership and indicated that the defendant was not going to return to the store to retrieve the

cellphone. At that time only, the Court held, that the defendant's expectation of privacy ceased to exist.

While the Government provided the court with case law that established dropped items by a defendant during flight evading law enforcement were abandoned, all of the cases cited had clearly demonstrable facts regarding the Defendant's intent to abandon. In Taylor, the police officer saw the cell phone in the defendant's hand and witnessed the defendant throw the phone and then walk away. In Tinoco, the United States Coast Guard witnessed the barrels of cocaine being tossed over the side of the vessel as it was attempting to evade law enforcement. Finally, in Sparks, the defendants had made an affirmative act of denying ownership when it did not request that the phone be turned into customer service.

The determinative factual issue before the court is whether abandonment can be established, absent direct evidence that law enforcement witnessed Defendant abandon the cellphone on his person by intentionally dropping, throwing, or voluntarily discarding it.[6] Considering the circumstances, the Court has concluded that Defendant abandoned the cellphone on his person.

From the very beginning of the traffic stop, suspicious circumstances were present. Defendant was seated in the back seat of the vehicle, alone, with a black bag next to him, even though the front passenger's seat was vacant. The Driver exited the vehicle and confessed to using crack cocaine approximately one hour prior to the traffic stop. The comments and demeanor of Defendant were also suspicious, as he was extremely agitated through the entire

---

[6] Patrolman Junkins testified that Defendant fled police during the night, at approximately 10 p.m. Law enforcement did not see a cell phone in Defendant's hands, nor did Patrolman Junkins see Defendant throw a cell phone on the ground. During this time, Defendant was running through a parking lot, scaled and/or climbed over a wall and ran through the woods. Defendant's possession of the cell phone during flight would not necessarily weigh him down that he would need to get rid of it in order to make flight easier. Defendant has also claimed ownership of the phone, even after extremely incriminating evidence—as his attorney describes— was found on the device. This claim of ownership is in direct contrast to the first type of abandonment—denial of ownership. See Sparks, 806 F.3d at 1353.

12

stop and repeatedly requested that he be excused to use the bathroom, even though, because of the location of the stop, there were several opportunities for Defendant to use the bathroom prior to the traffic stop. Finally, Defendant fled into the night through a parking lot, over a retaining wall, and into the adjoining woods where the cellphone was found. The Court also finds that the testimony of the Patrolman Junkins with regard to the traffic stop and the events that led up to Defendant's flight, and the flight itself, to be credible.

The totality of the circumstances leads the undersigned to find that Defendant did abandon the cellphone on his person as he did the cellphone in the vehicle. Defendant also cannot prove that he enjoyed a reasonable expectation of privacy in the contents of the cellphone. Because Defendant does not have standing to object to the search and seizure of the cellphones, the Court does not need to address the issues of the search warrant contained in the Motion to Suppress and recommends that the District Court deny Defendant's Motion to Suppress.

## IV.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court find that Defendant abandoned all three cellphones when he fled from law enforcement following a routine traffic stop. As a result, the undersigned also **RECOMMENDS** that the District Court find that Defendant lacks standing to contest the constitutionality of the search for there is no reasonable expectation of privacy in the cellphones. The undersigned also **RECCOMENDS** that the District Court deny Defendant's Motion to Suppress for lack of standing.

Any party may, by **Wednesday June 6, 2018, at 5:00 p.m.**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections.[7] A copy of such objections should also be submitted to the

---

[7] "Although parties are typically given fourteen days to respond to a Report and Recommendation, see 28 U.S.C. § 636(b)(1), this allowance is a maximum, not a minimum, time to respond, and the Court may require a response within a shorter period if exigencies of the calendar require. United States v. Barney, 568 F.2d 134, 136 (9th

13

Honorable Irene M. Keeley United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

---

Cir.1978)." United States v. McDaniel, 1:16-CR-52 (ECF No. 32 at 14-15, at footnote). See also United States v. Cunningham, 2011 WL 4808176, n.1 (N.D.W. Va., Oct. 6, 2011); United States v. Mason, 2011 WL 128566, n.7 (N.D.W. Va., Jan. 7, 2011).

On May 14, 2018, Defendant filed a Motion to Suppress. The Government's response was due on May 21, 2018 and the motion hearing was scheduled for May 29, 2018, at 10:00 a.m.. The Government did not provide a response before the scheduling order's deadline on May 21, 2018. On May 22, 2018, Defendant filed a pro se Motion for New Counsel arguing that his current counsel was threatening him to take a plea and that his current counsel was racist. (ECF No. 62). Following a sealed hearing, Defendant was appointed new counsel. (ECF No. 69). To give new counsel time to review the Motion that previous defense counsel had filed, the Motion hearing was continued. On May 25, 2018, after the undersigned's office was notified that he wished to continue the hearing as scheduled, the undersigned again scheduled the hearing for May 29, 2018, at 10:00 am. On May 29, 2018, at 9:26 a.m., the Government filed a Motion to Continue the hearing. (ECF No. 71). The Government stated that due to the Assistant United States Attorney and support staff leaving early on May 25, 2018 for the holiday weekend, the United States was unable to issue a subpoena for the witness for the May 29, 2018 hearing. On June 1, 2018, Defendant in person and by newly appointed counsel, William Pennington, as well as, the United States, by Zelda E. Wesley, Assistant United States Attorney, were present for the Motion hearing. During the hearing, the United States asserted that Defendant had no standing to contest the abandoned cellphones. Defense Counsel was not informed of this argument until the end of the hearing and had no time to adequately prepare. As a result, the undersigned provided Defense Counsel until Monday June 4, 2018, at 5:00 pm. to prepare a response addressing the issue of abandonment. The pretrial conference is scheduled for Wednesday June 13, 2018 and any objections to the Motion will need to be reviewed and ruled on by the District Court prior to that conference. The resulting calendar exigency thus warrants shortening the period with which to file objections to the Report and Recommendation from fourteen (14) days to one (1) day.

It is so **RECOMMENDED.**

Respectfully submitted this June 5, 2018

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE